Paul A. Pino, J.
The defendant has made a motion, which has been referred to this court, to reconsider and reduce the sentence previously imposed upon the defendant on January 14,1972, on the grounds that it represents a ‘ ‘ cruel and unusual punishment ” and a denial of the defendant’s constitutional rights and, further, that the sentence ‘1 violates the mandatory requirements of Sections 207 and 208 of the Mental Hygiene Law in that this Court failed to order a physical examination of this defendant prior to sentence ” in order to determine whether the defendant was a narcotic addict.
The District Attorney has joined in this application only to the extent that he urges this court to reconsider the sentence and allow the second 15-year sentence to run concurrently with the first, on the grounds that a 15-year sentence “will not only be commensurate with the public interest, but will afford the defendant a measure of justice tempered with mercy ”.
The defendant’s position is set forth in affidavits submitted by S. Mac Gutman, the attorney who tried the case and by Robert Kasanoff, the attorney of record for the Legal Aid Society. The District Attorney’s position is outlined in an affidavit by Lawrence Gray, the Assistant District Attorney who tried the case.
This court wishes to point out that none of these attorneys has submitted any memoranda of law to support their general allegations, and in fact, while all of them strenuously argue the factual aspects of the sentence none of them mentions the law except in a rather general and tangential way.
CPL 440.20 (subd. 1) sets forth the only legal grounds upon which this court may set aside or disturb this sentence. They *1076 are that the sentence was 1 ‘ unauthorized, illegally imposed or otherwise invalid as a matter of law
The defendant, in a general and vague way, claims that the sentence constitutes “cruel and inhuman treatment” and is therefore unconstitutional.
Section 70.00 (subd. 2, par. [c]) of the Penal Law provides that on a conviction for a Class C felony “ the term shall be fixed by the court, and shall not exceed fifteen years ”. This defendant was convicted after trial by a jury on all counts in the indictment which enumerated six crimes — two Class C felonies; two Class D felonies, and two Class A misdemeanors. This court, within the law, imposed two 15-year sentences to run consecutively on each of the Class C felony convictions.
Section 70.25 of the Penal Law permits the court to give consecutive sentences where the facts upon which the convictions are based are separate and distinct acts. In this case, the jury found that the defendant sold narcotics — a Class C felony — on two separate dates, August 24, 1971 and August 26, 1971. These are separate and distinct criminal acts for which consecutive sentences could properly be imposed under the statute.
This court having sentenced this defendant, within the bounds of the discretion permitted in the statute, it cannot be said that the sentences were cruel and inhuman.
The defendant also contends that the sentence is unconstitutional in that it severely penalizes the defendant for exercising his right to trial by jury.
This bare allegation is made with no effort to point to any fact in the record of this case to justify this assertion.
The defendant’s attorney in his motion states that he joins the District Attorney in his remarks, at the time of sentence; but an examination of those minutes reveals that it was the District Attorney who asked that the defendant be penalized for going to trial when he stated “ we had recommended a maximum sentence of 15 years. The man did put the People to their proofs. He went to trial ”.
This court wishes to make it crystal clear that the fact that this defendant went to trial played no part in the sentence he received. Had this defendant, Jerry Williams, pleaded guilty to two separate and distinct Class C felonies based on the facts of this case and on the basis of this defendant’s probation report, this court would have given the defendant, Jerry Williams, exactly the same sentences that it imposed on January 14, 1972. Not one day of that sentence was based on the fact that the defendant went to trial. As the court rejected other *1077 recommendations of the District Attorney, it also rejected his unconscionable recommendation of giving this defendant a sentence merely for having “ put the People to their proof”.
The defendant also contends that the sentence is improper in that sections 207 and 208 of the Mental Hygiene Law have not been complied with.
In substance, section 207 provides that a defendant charged with drug-related crimes, such as this defendant, must be examined to determine if he is an addict.
Section 208 insofar as it is applicable here says that where a defendant has been examined pursuant to section 207, the court shall not sentence the defendant until it receives the report of such examination.
This contention of the defendant, like the others, is totally without substance.
Section 210-a of the Mental Hygiene Law states that, notwithstanding sections 207, 208, 209 and 210 of the Mental Hygiene Law, no order certifying an individual to the care and custody of the commission shall be effective in any of its terms unless the commission consents to such certification.
On April 20, 1971 the Chairman of the Narcotic Addiction Control Commission wrote a letter to the Administrator of the Judicial Conference, the Honorable Thomas F. McCoy, in which he said in part:
“ As you are aware the fiscal resources made available to the Commission for the fiscal year commencing April 1,1971 require a drastic retrenchment and reorientation of the operations of the Commission. * * #
“Accordingly, pursuant to the provisions of Chapter 50 of the laws of 1971, this Commission hereby announces the temporary suspension of in-take for new certifications under the provisions of Secs. 206, 208, 209 and 210 of the Mental Hygiene Law, effective as of April 30, 1971, and until further notice.”
The Narcotic Addiction Control Commission having revoked permission, by letter dated April 20, 1971, “until further notice ”, the provisions of section 210-a supersede sections 207 and 208 and in effect suspend the enforcement of those sections.
However, in this case this court wishes to point out that there was compliance with sections 207 and 208 of the Mental Hygiene Law.
The probation report dated January 6, 1972 states that the defendant is ‘ ‘ certified ” as a narcotic addict; and this information was before the court prior to sentence.
*1078 The intent of section 207 is to determine if the defendant is an addict, and the intent of section 208 is to delay sentence until the court is made aware of that determination.
Here, the defendant was certified an addict and the court was made aware of that fact prior to sentence, and then the court imposed a sentence under the Penal Law- — -the only course open to it under section 210-a, in light of the letter from the Narcotic Addiction Control Commission.
Both the People and the defense argue that this sentence is excessive. Neither the People nor the defense claims that it is excessive as a matter of law, but that it was excessive to this defendant because he was a “ small-scale street pusher
The Practice Commentary that appears in McKinney’s Consolidated Laws under CPL 440.20- by Professor Richard Gr. Denzer, the architect and chief draftsman of the Criminal Procedure Law, clearly states, referring to motions of this type, that ‘ ‘ the new motion accommodates only contentions of illegality and not claims of harshness or excessiveness ”. So that the unfounded claim of excessiveness is not a proper basis of this motion.
Even if we were to assume that excessiveness were a legal ground for this type of motion, this defendant could not prevail on this motion.
The sentence in this case is not excessive.
This court, in imposing on this defendant two consecutive 15-year periods of imprisonment did so only after careful and serious consideration of the defendant’s probation report and the facts in his case.
The probation report indicates that this defendant has a criminal record of six arrests, five of which were narcotic-related cases.
The report shows that: (1) On June 1, 1965, this defendant was convicted for unlawfully loitering in a school yard at 10:30 in the morning, in Manhattan.
(2) On September 21, 1966 at about 2 p.m. this defendant was arrested and charged with unlawful possession of narcotic drugs inside the Mt. Morris Park playground, Manhattan.
(3) On February 7,1968 this defendant was arrested at 116th Street and Park Avenue, Manhattan and charged with criminal possession of drugs. He allegedly possessed 22 glassine envelopes containing heroin.
(4) On March 13, 1968 at 2:30 p.m., this defendant was arrested at 133 Lenox Avenue, Manhattan for possessing 45 glassine envelopes containing heroin. On July 26, 1968 a war *1079 rant for the defendant’s arrest was issued in Criminal Court for his nonappearance in court. Said warrant is still open.
(5) On July 19, 1968 at 12:30 a.m. in front of 136 Bast 73rd Street, this defendant was arrested for mugging a woman and stealing her pockefbook containing money and valuables.
On November 13, 1968, on his conviction for the above-mentioned indictment, this defendant was certified, as a drug addict, and committed for 36 months to the Narcotic Addiction Control Commission. He violated his NACC parole on three occasions and at the time of his arrest, on September 1, 1971, a warrant for parole violation was outstanding for him.
The report also shows that he was paroled on September 26, 1969 and returned as a violator on January 7, 1970. He was reparoled on November 9,1970 and again returned as a violator on April 20, 1971. The defendant was again paroled a third time on May 11,1971 and declared a violator on July 9,1971.
(6) On September 1, 1971, this defendant was again arrested for possession and sale of dangerous drugs (heroin) to an undercover police agent on two separate occasions, August 24 and August 26, 1971.
It is obvious, from this defendant’s criminal record and probation report, that he has shown no desire nor expressed any willingness to rehabilitate himself in spite of the efforts of the NACC program.
As this court indicated on the date of sentence, this defendant is 1 ‘ not only a drug user but, more dangerously, a drug pusher — a sick-minded person who has helped contribute to our serious and frightening drug epidemic in this City ”.
It is still the strong and firm feeling of this court, as expressed at the time of sentence, that 11 characters of his ilk who prey on our young people and who have created panic in our communities, are unfit to be a part of our society and must be removed if we are to save our young element and our City from complete physical destruction ’ ’.
This court went on to say that it ‘ ‘ has a serious responsibility to society and must, within the limits of our laws, do everything possible to halt the illicit traffic of drugs in our City. It must take all necessary steps, within the confines of our laws, to prevent the destruction and the killing of our young people. It must make every effort to try to curb the rising crime wave that has gripped this City”.
This court reiterates its unwavering position that it is the so-called “ small-fry pushers ” and not the major sellers who contact and sell dope to the thousands of young people on our *1080 street corners, in our playgrounds, schoolyards and public parks. It is the “ small-fry pusher ” who is the local merchant that sells his products of death and physical destruction to our young people. Recent statistics show that over 1,600 young people died last year in this city from overdoses of drugs.
This court agrees that big-time dope sellers must be taken out of circulation. It feels, however, that one of the ways to stop the major drug dealers is to remove their “ small-fry pushers ” from our streets, thereby cutting off their lucrative outlets. Today’s “ small-fry pushers ” will be tomorrow’s big-time dealers unless we tackle the one area of the drug problem which has been neglected — the lower levels of suppliers •— the street dope peddlers. This is a fact that the Federal Government has finally recognized as a major source of our drug problem.
This court fully realizes the fact that a severe jail sentence on one ‘ ‘ small-fry pusher ’ ’ will not cure or solve our ever increasing drug problem in this city, but the imposition of maximum sentences will, in this court’s opinion, have a deterring effect and will be a step in the right direction towards a solution of a dangerous and tragic situation.
The People contend that the defendant is a user of narcotics and that a lesser sentence would “be commensurate with the public interest ’ ’. This court must disagree. The public interest would best be served by the incarceration of all the Jerry Williams of this city.
This court is not insensitive to the plight of this defendant. He is, as I have already stated, a ‘ ‘ sick-minded person ’ ’. However, concern for a seriously diseased human being does not justify permitting him to transmit and communicate his disease to innocent victims. This court’s concern for this defendant is exceeded only by its deep and sincere concern for those he has already contaminated and for those he would undoubtedly contaminate in the future.
For the foregoing reasons, this motion is in all respects denied.